UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL FISCUS,

               Plaintiff,

      v.

COMBUS FINANCE AG, a Swiss
Corporation, d/b/a COMBUS
GmbH, d/b/a THE COMBUS GROUP;
ROLF SCHNELLMANN; FLURIN VON
PLANTA; GLOBAL RESEARCH AG, A
Swiss Corporation; MULTIFORUM
AG, a Swiss Corporation; ROLF
HAENNI a/k/a ROLF HANNI

               Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 03-1328 (JBS)

**OPINION**

**APPEARANCES**:

Edward F. Borden, Jr., Esq.
Kristen J. Telsey, Esq.
EARP COHN, PC
20 Brace Road
4th Floor
Cherry Hill, NJ 08034
    Attorneys for Plaintiff

Andrew C. Miller, Esq.
Sheldon G. Karasik, Esq.
KARASIK & ASSOCIATES, LLC
28 West 36th Street, Suite 901
New York, NY 10018
    Attorneys for Defendant, Rolf Schnellmann

**SIMANDLE**, District Judge:

This matter comes before the Court on a motion by defendant Rolf Schnellmann ("Schnellmann") for dismissal based on three alternative grounds.  Schnellmann first moves for dismissal for lack of personal jurisdiction, pursuant to Fed. R. Civ. P.

12(b)(2).  Second, Schnellmann moves for dismissal based on a
forum selection clause in an escrow agreement Schnellmann
contends obligates the parties to litigate this matter in
Switzerland under Swiss law.  Finally, Schnellmann moves for
dismissal under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  The
plaintiff, Michael Fiscus ("Fiscus"), has opposed Schnellmann's
motion on all three alternative grounds.  For the reasons stated
below, Schnellman's motions to dismiss for lack of personal
jurisdiction, in favor of enforcement of the forum selection
clause and under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> are denied.

I.   **BACKGROUND**

    **A.   Facts**

    In early 1999, Fiscus, a New Jersey resident, was in
possession of more than 2,000,000 shares of eVentures Group,
Inc., a Delaware corporation, based in Dallas, Texas.  The stock
was not registered under United States securities laws and
therefore its transfer was subject to certain restrictions.
Fiscus began to seek a buyer willing to purchase his shares in
eVentures subject to these restrictions.  Mr. Fiscus, who
occasionally served as an officer of eVentures, asked two co-
workers, Steve Roebling (eVentures' Chief Financial Officer) and
Peter Schnellmann (who assisted in the accounting office of
eVentures), if they knew anyone who might be interested in
purchasing part of his ownership interest.  (Certification of

Michael Fiscus ¶ 3, 5.)  Peter Schnellmann notified Mr. Fiscus that his brother, Rolf Schnellmann might be interested in purchasing some shares of eVentures.  (<u>Id</u>. ¶ 7.)[1]

Fiscus, a U.S. citizen and resident of New Jersey, and Schnellmann, a citizen of the Swiss Confederation, met in New York City to discuss the possibility of a sale of Fiscus' stock. (<u>Id</u>. ¶ 9; Complaint ¶ 1, 3.)  According to Fiscus, at this meeting, Schnellmann told him that Schnellmann managed billions of dollars in funds at a company called ComBus (allegedly a substantial European brokerage firm with clients in Europe, the United States and other parts of the world.)  (<u>Id</u>.)

From late 1999 until May 2002, Fiscus negotiated the sale of a large quantity of his eVentures shares with Swiss citizens Schnellmann and Rolf Haenni ("Haenni") and Swiss corporations ComBus Finance AG ("ComBus") and Multiforum AG ("Multiforum"). (Fiscus Cert. ¶ 10.)  Initially Fiscus was given the impression that Haenni and Multiforum would make the purchase. (<u>Id</u>. ¶ 12; Compl. ¶ 13.)  Around March 2000, however, Schnellmann telephoned Fiscus to inform him that "there were problems" with Haenni and that Multi and Haenni would not be part of the deal. (<u>Id</u>.)  After Multiforum and Haenni were excluded from the transaction, Schnellmann and Flurin von Planta (a Swiss attorney connected

---

[1]  Plaintiff certified that he believed that, in making his suggestion to Fiscus, Peter Schnellmann was acting as an agent for Rolf Schnellmann. (Fiscus Cert. ¶ 8.)

with the transaction), acting for ComBus, Global Research and themselves, advised Fiscus that a company named Global Research AG would purchase the shares of eVentures. (Id.  ¶ 13.) According to Fiscus, Schnellmann told Fiscus that he was one of the principals of Global Research AG.  (Id.  ¶ 12.)

While negotiating the transaction, Schnellmann communicated with Fiscus regularly for a period of eighteen months (beginning in October of 1999) via telephone, email and facsimile regarding the potential sale. (Id. ¶¶ 9, 13.)  The calls and electronic communications were either made or sent to Fiscus while Fiscus was almost exclusively located in New Jersey.  (Id.)  In addition, according to Fiscus, Fiscus spoke to Schnellmann at least every other day over a six month-period beginning in April of 2000.  (Id. ¶ 17.)  The telephone calls were generally made by Schnellmann to either Fiscus' home in Ocean City, New Jersey or his home in Haddonfield, New Jersey.  (Id.)  In particular, when "problems" arose with Haenni, Fiscus had daily conversations with Schnellmann "regarding the sale price of the stock, the issuance of letter opinions and the issuance of certificates." (Id. ¶ 18.)  At the request of the Court, Fiscus submitted a Supplemental Certification documenting email messages, faxes, letters and other documents sent or received by Fiscus or his attorney (Stephen A. Dennis, Esq.) in connection with his dealings with Rolf Schnellmann.  (Supplemental Certification of

Michael Fiscus ¶¶ 2-3.)  The Supplemental Certification shows twelve email or fax communications sent between March 2000 and May 2001 (with ten communications coming between March 2000 and June 2000) directly from Schnellmann to Fiscus.[2]  (Fiscus Suppl. Cert. ¶¶ 1-5, 8-10, 12, and 15-17.)

Schnellmann's certification tells a different story with respect to the amount of contact between him and Fiscus. (Certification of Rolf Schnellmannn ¶ 4.)  According to Schnellmann, after their meeting in New York, Schnellmann had "limited contact" with Fiscus.  (Id.)  In fact, Schnellmann states that he had "very little contact – several phone discussions... - until a buyer was located."  (Id.)  The email and fax evidence, however, tells a different story of frequent, purposeful negotiations and communications with Fiscus in New Jersey.

On May 17, 2000, the parties agreed that Fiscus would sell 100,000 shares of eVenture stock for a purchase price of $1,000,000, (Fiscus Cert. ¶ 14), which was memorialized in a letter agreement between Fiscus and Global Research executed in New Jersey on May 17, 2000. (Id. ¶ 26.)  The agreement provided that, in the event of a dispute, the law of the State of Delaware would apply.  (Pl.'s Ex. A.)  Also in May of 2000, von Planta

---

[2]  The Supplemental Certification contains evidence of other correspondence between Schnellmann or von Planta and Fiscus' attorney located in California.

emailed Fiscus' attorney in California, introducing himself as counsel for Schnellmann and ComBus, and suggested termination of an old escrow agreement with Multiforum and replacing it with an escrow agreement with Global Research.  (Def.'s Brief at 2, Ex. B.)  According to Schnellmann, the new escrow agreement (the "Escrow Agreement") was exchanged between Fiscus' attorney in California and von Planta and Schnellmann, and contained a forum selection clause whereby the parties agreed to accept the exclusive jurisdiction of the Swiss courts.  (Schnellmann Cert. ¶ 6.)[3] Fiscus, however, denies having signed the Escrow Agreement or any contract containing this forum selection clause. (Fiscus ¶ 25.)

Following the execution of the May 17, 2000 agreement, Mr. Fiscus tendered the eVentures shares, but has never received any payment for the sale. (Fiscus Cert. ¶ 22.)  In what Fiscus has titled "lulling" communications, Schnellmann contacted him by telephone, email, and mail, - each time with Fiscus receiving such communication in New Jersey and elsewhere in the United States - providing reasons for the delay in the purchase of

---

[3]  Specifically, the Escrow Agreement stated:

This Agreement is governed by Swiss law.  The place of performance of all obligations of the Trustee is Zurich. The parties hereto accept the jurisdiction of the ordinary courts of Zurich with the right of appeal to the Swiss Federal Court.

(Schnellmann Certification, Ex. C, ¶ 10)

Fiscus' eVenture shares and reassuring Fiscus that Schnellmann would complete the transaction shortly.  (Id. ¶ 27.)  The transaction was never completed.

**B.   Procedural History**

On March 26, 2003, Fiscus filed a complaint (the "Complaint"), naming three Swiss nationals (including Schnellmann) and three Swiss corporations as defendants. (Compl. ¶¶ 2-7.)  The Complaint contains allegations of securities fraud, common law fraud, breach of fiduciary duty, and negligence against all defendants.  (Id.  ¶¶ 26-45.)  Fiscus alleges that Schnellmann is personally liable for corporate acts and as an officer of Global Research.  (Id.  ¶¶ 37-40, 43-45.)  Schnellmann eventually filed this motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), for enforcement of a forum selection clause in the Escrow Agreement between the parties, and based on the doctrine of forum non conveniens.[4]  [Docket Item No. 21.]  The Court heard oral argument on Schnellmann's motion on December 7, 2005.  At the conclusion of oral argument, the Court requested that the parties make certain supplemental submissions including, from Fiscus, an Affidavit of Michael Fiscus documenting communication between

_____

[4]  This Court previously issued an opinion dismissing two co-defendants: Swiss national von Planta and Swiss corporation Global Research for lack of personal jurisdiction.  See Fiscus v. ComBus Finance AG, No. 03-1328, slip. op. at 2 (D.N.J. July 22, 2004)("Fiscus I").

Schnellmann and Fiscus (and attaching such documentation to the affidavit, [Docket Item No. 33.]) and from Schnellmann, a brief addressing the issue of national service of process and <u>forum</u> <u>non</u> <u>conveniens</u> regarding whether there is an adequate alternative forum.  [Docket Item No. 36.]

II.  <u>**DISCUSSION**</u>

In his motion, Schnellmann makes three major arguments for why dismissal is appropriate: (A) that this Court lacks personal jurisdiction and must dismiss the claim under Fed. R. Civ. P. 12(b)(2); (B) that the Court must dismiss Plaintiff's claim and enforce a forum selection clause in the Escrow Agreement mandating all disputes be brought in Switzerland; and (C) that the Court must decline jurisdiction based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  The Court will address each of these arguments in the order outlined above.

A.  <u>**Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction**</u>

In the Third Circuit, once a defendant raises the defense that the court lacks personal jurisdiction, plaintiff bears the burden of establishing personal jurisdiction.  See <u>Mellon Bank (East) P.S.F.S. v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).  While the plaintiff bears the burden, he or she need only establish a prima facie case to establish the existence of personal jurisdiction over a defendant where the factual record contains only pleadings and affidavits.  See <u>LaRose v. Spondo</u>

8

<u>Mfg., Inc.</u>, 712 F. Supp. 455, 458 (D.N.J. 1989).  Under Fed. R. Civ. P. 4(e), a district court has personal jurisdiction over nonresident defendants "to the extent authorized under the law of the forum state in which the district court sits."  <u>Sunbelt Corp. V. Noble, Denton & Assoc., Inc.</u>, 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long-arm statute extends personal jurisdiction to the boundaries of the Due Process Clause Fourteenth Amendment. <u>See</u> N.J. Ct. R. 4:4-4.  Thus the only analysis that this Court must perform is whether the assertion of personal jurisdiction over Schnellmann satisfied the Due Process Clause.

Although the district court can exercise personal jurisdiction over a nonresident defendant if the court possesses either general or specific jurisdiction, specific jurisdiction is the only type of jurisdiction implicated in this matter.  Fiscus claims that this Court has specific jurisdiction over Schnellmann because Fiscus' claims are related to or arise out of Schnellmann's purposeful contacts with the forum state (New Jersey) and Fiscus is not claiming that Schnellmann is a foreign defendant who has engaged in "systematic and continuous" activities in New Jersey.  <u>See</u> <u>Dollar Sav. Bank v. First Sec. Bank of Utah</u>, 746 F.2d 208, 211 (3d Cir. 1984).  Specifically, Fiscus alleges that his claims arise out of Schnellmann's contacts within New Jersey - namely telephone calls, emails and faxes sent or made to New Jersey - thus making an analysis under

9

the "minimum contacts" framework appropriate.  The relevant consideration requires a two-part analysis.  A plaintiff asserting specific jurisdiction over a foreign defendant must establish that the defendant (1) has made the necessary "minimum contacts" for the assertion of jurisdiction, and (2) those contacts must be deemed reasonable, such that the court's assertion of jurisdiction "would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).

### 1.   Minimum Contacts

#### a.   Legal Standard

Deciding whether a defendant has the minimum contacts with the forum state requires a determination that "the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "A single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state." Osteotech v. Gensci Regeneration Sciences, Inc., 6 F. Supp. 52, 56 (D.N.J. 1998) (citing Burger King, 471 U.S. at 476).  Physical presence within the forum state is not required to establish personal jurisdiction over a non-resident

10

defendant.  Burger King, 471 U.S. at 476.  In particular, the

Supreme Court has held that:

> Jurisdiction...may not be avoided merely because the
> defendant did not physically enter the forum State.
> Although territorial presence frequently will enhance a
> potential defendant's affiliation with a State and
> reinforce the reasonable forseeability of suit there,
> it is an inescapable fact of modern commercial life
> that a substantial amount of business is transacted
> solely by mail and wire communications across state
> lines, thus obviating the need for physical presence
> within a State in which business is conducted.  So long
> as a commercial actor's efforts are "purposefully
> directed" toward residents of another State, we have
> consistently rejected the notion that an absence of
> physical contacts can defeat jurisdiction there.

Burger King, 471 U.S. at 476 (internal citations omitted).  The

Third Circuit has held that telephone communication or mail sent

by a defendant into a forum state does not trigger personal

jurisdiction in that state if the actions "do not show purposeful

availment."  Mellon Bank, 983 F.2d at 556; Barrett v. The

Catacombs Press, 44 F. Supp. 2d 717 (E.D. Pa. 1999).  However,

contract negotiations with forum residents "can empower a court

to exercise personal jurisdiction over persons outside the

forum."  Grand Enter. Group, Ltd. v. Star Media Sales, Inc., 988

F.2d 476 (3d Cir. 1993)(citing Carteret Sav. Bank, F.A. v.

Shushan, 954 F.2d 141, 147-48 (3d Cir. 1992)).

In an action challenging personal jurisdiction, the

plaintiff bears the burden of demonstrating sufficient contacts

within the forum state to give the court personal jurisdiction

over the defendant.  See Compagnie des Bauxites de Guinee v.

11

L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 362 (3d Cir. 1983).  The plaintiff only needs to make out a prima facie case of minimum contacts.  See Star Media, 988 F.2d at 483 (holding that, after the plaintiff makes out a prima facie case of purposeful availment, the defendant must present a compelling case that the assertion of jurisdiction would be unreasonable). Overarching this Court's analysis of whether the Court has jurisdiction is the fact that a court must construe the papers in the light most favorable to plaintiff and must resolve disputed facts in favor of plaintiff in determining whether plaintiff has met its burden of proving that personal jurisdiction is proper through affidavits or other competent evidence.  Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996); see also Carteret Sav. Bank, 954 F.2d at 142, n. 1; Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

### b.  Analysis

Schnellmann argues that Fiscus has not demonstrated that Schnellmann had sufficient minimum contacts with New Jersey for this Court to exercise personal jurisdiction.  (Def.'s Br. at 3.) According to Schnellmann, he had little contact with New Jersey and the fact that he made telephone calls to someone located in New Jersey does not, by itself, subject him to the states' long-arm statute jurisdiction, because these actions do not result in him "purposefully availing" himself to the forum state.  See

Barrett, 44 F. Supp. 2d at 729.  Second, Schnellmann argues that

he had less contact with New Jersey than his co-defendants Global

Research and von Planta who were dismissed from this case.  See

Fiscus I, slip op. at 2.  Finally, Schnellmann argues that Fiscus

has presented no evidence that Schnellmann is conducting business

of any kind anywhere in the United States, making it unreasonable

to subject him to jurisdiction of this Court.  (Def.'s Br. at 6.)

This Court disagrees.  The controlling law in this Circuit

is that telephone communication and mail contacts with a forum

state by a defendant does not trigger personal jurisdiction over

the defendant unless such contacts "show purposeful availment" to

the laws of that jurisdiction, see Mellon Bank, 983 F.2d at 556.

This Court considers this case to be a case where the defendant

has purposefully availed himself of the laws of the State.  Not

only did Schnellmann have regular and extensive communication

with a person in New Jersey, he did so in order to negotiate a

business transaction that would have created rights and

obligations among citizens of the state to perform certain

duties.

The present case is analogous to the Third Circuit's

decision in Star Media and our sister court's decision in Kultur

Int'l Films, Ltd. v. Covenant Gordon Pioneer, FSP., Ltd., 860 F.

Supp. 1055 (D.N.J. 1994).  In Star Media, defendants were a

Spanish corporation and Spanish national appealing a final order

13

denying their motion to set aside default judgment arguing, among other things, that the district court's exercise of personal jurisdiction over them violated due process.  See Star Media, 988 F.2d at 478.  The Third Circuit held that the defendant Spanish national, who was never physically present in the forum state (Pennsylvania), had sufficient contacts with Pennsylvania necessary to permit the district court to exercise jurisdiction over them.  See id. at 482-83.  The defendant directed at least twelve communications into the Pennsylvania and engaged in negotiations for an agreement that would have created rights and obligations among citizens of Pennsylvania.  See id.  According to the court, the defendant "deliberately and personally directed significant amount of activities towards the state including numerous phone calls and mail from his agent," and that defendant's "personal, intentional communications gave rise to the underlying suit...."  Id. at 483.  Indeed, the fact that the defendant "voluntarily decided to negotiate with [individuals in Pennsylvania, he] cannot now be heard to complain about answering a suit concerning the effect of negotiations in the jurisdiction in which some of those negotiations occurred."  Id.

Kultur Int'l Films involved a defendant, a British corporation with its sole office located in London, England, which had no physical presence in New Jersey but made "numerous" phone calls and sent seven faxes and letters to the plaintiff in

the plaintiff's New Jersey office.  <u>Kultur Int'l Films</u>, 860 F. Supp. at 1056, 1058-59.  These communications involved the negotiations of an agreement to distribute videos of certain music performances.[5]  <u>See</u> <u>id</u>.  The district court held that it was "satisfied that [the defendant] had just enough contact with [the plaintiff] in New Jersey to allow this Court to exercise personal jurisdiction" over the defendant.  <u>Id</u>. at 1059, 1062.

In the present case, as in <u>Star Media</u> and <u>Kultur Int'l Films</u>, this Court finds that Schnellmann had sufficient minimum contacts with New Jersey to allow the Court to exercise personal jurisdiction over him.  Schnellmann sent at least eleven emails or faxes directly to Fiscus wherein the parties negotiated the purchase of eVenture stock.  (Fiscus Supp. Cert. Ex. 1-5, 8-10, and 15-17.)  According to Fiscus' Certification, Fiscus spoke with Schnellmann "at least twice a week - often more frequently - every week for a period of over six months beginning in April 2000," with the calls "usually [being] initiated by Schnellmann to [Fiscus'] cell phone or to [his] homes in Haddonfield, New Jersey or Ocean City, New Jersey."  (Fiscus Cert. ¶ 17.)  Fiscus "was virtually always in New Jersey at the time [he] received the calls" whether the calls were made to his cell or home phones.

---

[5]    Another fact that is similar between <u>Kultur Int'l Films</u> and the present case is that the telephone, electronic and mail communication between the parties followed initial meetings and negotiations in New York City.  <u>See</u> <u>Kultur Int'l Films</u>, 860 F. Supp. at 1058-59; Fiscus Cert. ¶ 9.

(Id.)   Moreover, after the "problems" with defendant Haenni
arose, Fiscus states that his "daily conversations continued
regarding the sale price of the [eVenture] stock."  (Id. ¶ 18.)
Between July 2000 and June 15, 2002, Schnellmann and other
defendants sent Fiscus "a series of 'lulling' communications by
fax or email and near daily telephone calls" to New Jersey in
which Schnellmann and others attempted to placate Fiscus, who had
become anxious that the transaction was falling or had fallen
apart.  (Id. ¶ 27.)

These extensive contacts with New Jersey, albeit only via
phone, fax and electronic mail, in which Schnellmann engaged in
negotiations for the purchase of eVenture stock are sufficient
minimum contacts to permit this Court to exercise personal
jurisdiction over Schnellmann as to this very transaction.[6]  Like
the defendant in Star Media, Schnellmann, while not physically
present in New Jersey, "engaged in negotiations for an agreement
that would have created rights and obligations among citizens of
[New Jersey]...[and] deliberately and personally directed
significant activities towards the state."  Star Media, 988 F.2d

---

[6]  Having found that Schnellmann's telephone, fax, mail and
electronic mail contacts with Fiscus made during the course of
negotiating the purchase of certain stock from Fiscus is
sufficient minimum contacts, this Court need not address whether
the face-to-face meeting between Schnellmann and Fiscus in New
York City should be a factor in whether Schnellmann had minimum
contacts with New Jersey for this Court to have personal
jurisdiction.

at 482-83 (citing <u>Burger King</u>, 471 U.S. at 475-76.)  Like the
foreign defendant in <u>Star Media</u>, Schnellmann's "personal,
intentional communications gave rise to the underlying suit," and
because "[h]e voluntarily decided to negotiate with [Fiscus, he]
cannot be heard to complain about answering a suit concerning the
effect of negotiations in the jurisdiction in which some of those
negotiations occurred."  <u>Star Media</u>, 988 F.2d at 483.[7]

---

[7]  Fiscus raised the argument that this Court should
consider Peter Schnellmann's representations made to Fiscus in
eVenture's Jersey City headquarters as evidence of Rolf
Schnellmann's contacts with New Jersey because, in recommending
that Fiscus use Rolf's as a broker, Peter Schnellmann was acting
as Rolf Schnellmann's agent.  (Pl.'s Opp. Br. at 7.)  While this
argument raises interesting issues of whether actions of a
party's agent should be counted toward the minimum contacts
necessary to support jurisdiction and whether Peter was in fact
acting as Rolf's agent when Peter recommended Rolf's services,
this Court, having found that Rolf Schnellmann's extensive
telephone, fax, mail and electronic mail contacts with Fiscus are
sufficient minimum contacts for the exercise of personal
jurisdiction, need not address this issue.  To the extent that
Peter was authorized to speak for Rolf on these matters in New
Jersey, Peter's numerous personal contacts in New Jersey would
only buttress the Court's finding of personal jurisdiction of
Rolf.

Moreover, the Court having found personal jurisdiction over
Rolf Schnellmann based on the application of traditional due
process analysis established in <u>Burger King</u> and <u>International
Shoe</u>, this Court need not address Plaintiff's argument that all
of defendant Schnellmann's contacts with the entire United States
should be considered when a court rules upon a personal
jurisdiction motion in a case brought under a federal statute
(here, the Securities Exchange Act of 1934, 15 U.S.C. § 78j)
authorizing nationwide service of process.

###### c.   Distinction between the Present Matter and Fiscus I.

The Court next addresses Schnellmann's argument that the Court should grant his motion to dismiss for lack of personal jurisdiction because this Court had earlier held that co-defendant Flurin von Planta did not have sufficient minimum contacts with New Jersey to warrant the exercise of personal jurisdiction.  See Fiscus I, slip op. at 14.  According to Schnellmann, he had less contact with Fiscus than did von Planta. (Schnellmann Cert. ¶ 12.)  Such reliance on the part of Defendant is misplaced for a number of reasons.

First, in Fiscus I this Court based its decision on the fact that Fiscus had "provided insufficient facts to establish a steady exchange of communication between himself and Mr. von Planta in New Jersey" and that "the allegation that Mr. von Planta's contacts with [Fiscus] in New Jersey satisfy the requisite 'minimum contacts' [were] unsupported."  Fiscus I, slip op. at 14.  Here, Fiscus has provided this Court with considerable evidence that Schnellmann had extensive and regular communication with Fiscus and New Jersey regarding the sale of Fiscus' stock, as detailed above.  (Fiscus Suppl. Cert. ¶ 1-5, 8-10, 15-17; Fiscus Cert. ¶ 17.)  In contrast with the conclusory statement in Schnellman's certification, it is likely that Schnellmann, as the broker of the transaction and a principal of the buyer Global Research, (see Fiscus Cert. ¶ 12), had

18

considerably more contact with Fiscus and the State of New Jersey
than did von Planta.  Unlike in Fiscus I, Fiscus provided the
Court with detailed documentation of Schnellmann's fax and
electronic mail communications with Fiscus and a certification
that Fiscus had regular and extensive telephone contact with
Fiscus.  (Fiscus Cert. ¶¶ 9, 13 and 18.)  Second, the Court's
analysis in Fiscus I centered on insufficient allegations of
conspiracy theory and did not directly address the extent of von
Planta's telephone, email and mail contacts with New Jersey.
(Id.)  Thus, this Court's decision to deny Schnellmann's motion
to dismiss is not inconsistent with the Court's decision
regarding von Planta in Fiscus I.

### 2.  Fair Play and Substantial Justice

In addition to demonstrating that Schnellmann has sufficient
minimum contacts with New Jersey, this Court must determine
whether the exercise of jurisdiction over Schnellmann "accords
with the notions of 'fair play and substantial justice.'"
Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir.
1990)(quoting International Shoe, 326 U.S. at 316.)  "The burden
on a defendant who wishes to show an absence of fairness or lack
of substantial justice is heavy."  Star Media, 988 F.2d at 483.
Once the plaintiff has made out a prima facie case of minimum
contacts, "the defendant 'must present a compelling case that the
presence of some other consideration would render jurisdiction

unreasonable.'" <u>Carteret Sav. Bank</u>, 954 F.2d at 150 (quoting
<u>Burger King</u>, 471 U.S. at 477).  To determine whether a defendant
has made his case, a district court must consider (1) the burden
on the defendant; (2) the interests of the forum state; and (3)
plaintiff's interest in obtaining relief.  <u>See</u> <u>Star Media</u>, 988
F.2d at 483 (citing <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480
U.S. 102, 113 (1987) and <u>World-Wide Volkswagon Corp. v. Woodson</u>,
444 U.S. 286, 292 (1980).

When a foreign defendant is involved, "[t]he United States
Supreme Court has recognized that defending a lawsuit in a
foreign land is a burden that should be considered." <u>Star Media</u>,
988 F.2d at 483 (citing <u>Asahi</u>, 480 U.S. at 114)("The unique
burdens placed upon one who must defend oneself in a foreign
legal system should have significant weight in assessing the
reasonableness of stretching the long arm or personal
jurisdiction over national borders.")  However, as the Supreme
Court noted, "when minimum contacts have been established, often
the interests of the plaintiff and the forum in the exercise of
jurisdiction will justify even the serious burdens placed on the
alien defendant." <u>Asahi</u>, 480 U.S. at 114.

Here, like the Third Circuit's decision in <u>Star Media</u>, the
Court finds that Schnellmann's burden of defending this action in
New Jersey is not great enough to deprive him of his right to
fair play and substantial justice.  Although the burden on

Schnellmann would be substantial, Schnellmann "cannot now rely exclusively on the burden of litigating in New Jersey [as he] risked potential litigation in New Jersey when [he] actively negotiated" with Fiscus in New Jersey. <u>Kultur Int'l Films</u>, 860 F. Supp. at 1063. New Jersey's interests here lay in providing a forum for its citizens who allege securities fraud and other torts allegedly perpetrated by foreign nationals. Further, Fiscus obviously has an interest in pursuing his claims in the United States as this forum is more convenient and the application of federal securities laws and state law (whether New Jersey or Delaware) lends more legal certainty, enabling a fair and speedy adjudication. While Swiss courts may provide the requested relief Fiscus is requesting, as counsel for Fiscus argued during oral argument, there is no assurance that today Fiscus' claim can be brought in the Swiss courts.

Ultimately, it is Schnellmann's burden to show - by presenting "a compelling case" - that this Court's exercise of personal jurisdiction over him would be unreasonable. <u>See</u> <u>Star Media</u>, 988 F.2d at 483. Schnellmann has not met this burden. All Schnellmann has provided in support of his position that jurisdiction in New Jersey would be unreasonable is a certification stating that (a) he never intended to subject himself to the jurisdiction of the courts of the United States, (b) that he would suffer an extreme hardship if required to

defend this action in the United States and, (c) that he would
not be able to obtain documents and the testimony of certain
foreign witnesses important to his case because such documents
and witnesses are beyond the subpoena power of this Court.
(Schnellmann Cert. ¶¶ 9, 11-12.)

These concerns, individually or collectively, do not present
a compelling case of unfairness in the prospect of defending this
case in this Court.  If a defendant's subjective expectation
about exposure to the forum's jurisdiction were to receive
substantial weight in this calculus, no defendant would admit to
the possibility of such jurisdiction regardless of the
circumstances.  Likewise, the balance of hardship between this
Defendant litigating in New Jersey and this Plaintiff litigating
in Switzerland does not tip in favor of the Defendant, for
reasons discussed further in Part II.C, below.  Finally, this
Court does not consider any unfairness imposed on Schnellmann's
inability to obtain documents and testimony of foreign witnesses
to rise to the level of a compelling case of unfairness.  In his
certification, Schnellmann states specifically that "key persons
and documents necessary to [his] case are located in
Switzerland...[including] von Planta and Global Research AG...."
(Schnellmann Cert. ¶ 11.)  First, Schnellmann's argument that he
cannot obtain documents from Global Research seems disingenuous
as, according to a conversation Schnellmann had with Fiscus,

Schnellmann is a principal of Global Research.  (Compl. ¶ 3;
Fiscus Cert. ¶ 12.)  Certainly, Schnellmann can obtain documents
crucial to his defense from an entity in which he has a
controlling interest.  Second, the Court recognizes that it is
possible that Schnellmann may not be able to compel von Planta to
participate in discovery or testify at trial.[8]  However,
Schnellmann has failed to (a) provide the Court with a
description of the facts and circumstances that von Planta will
testify to (making him a "crucial trial witness") or (b) describe
why the information Schnellmann seeks to elicit from von Planta
(the lawyer for Global Research) cannot be obtained from other
sources (including witnesses and documents) that Schnellmann can
obtain or are within the Court's subpoena power.  As such,
Schellmann has not met his burden of demonstrating a compelling
case that this Court's personal jurisdiction would be
unreasonable.

**B.**   **Motions to Dismiss Due to the Forum Selection Clause**

The Court next addresses Schnellmann's argument that the
forum selection clause contained in the Escrow Agreement between
Fiscus and Global Research mandates that this action be final in
Switzerland and, thus, Fiscus' Complaint should be dismissed.
(Def.'s Br. at 7.)  Specifically, Schnellmann argues that the

---

[8]  The parties dispute whether von Planta could be compelled
to testify in this matter under the Hague Convention.  This Court
need not and will not take a position on this dispute.

Escrow Agreement states that "the parties hereto accept the jurisdiction of the ordinary courts of Zurich with the right of appeal to the Swiss Federal Court."  (Escrow Agreement § 10, Def.'s Cert. Ex. B.)  A party may bring a motion to transfer - governed by 28 U.S.C. § 1404(a) - from the initial federal forum to another federal court based on a valid forum selection clause.  See Salovarra v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 297-98 (3d Cir. 2001).  However, if the forum selection clause specifies a non-federal forum, the "district court must dismiss the action so it can be filed in the appropriate forum so long as the dismissal would be in the interests of justice."  Id. at 298; citing Instrumentation Assoc., Inc. v. Madsen Elec. (Canada) Ltd., 859 F.2d 4, 6 n. 4 (3d Cir. 1988).

        In Fiscus I, this Court alluded to the possibility that, if the Escrow Agreement is the controlling document in the case, the "forum selection clause governs as well...[and] the complaint would be dismissed to enforce the forum selection clause...."  Fiscus I, slip. op. at 15, n. 2.  Plaintiff argues that the Escrow Agreement is not a part of the current litigation and, thus, this Court must not enforce its forum selection clause.  (Pl.'s Opp. Br. at 15.)  As an alternative, Plaintiff argues that the Court should consider the May 17, 2000 letter agreement (the "Letter Agreement") between Fiscus and Global Research to control this dispute.  (Pl.'s Opp. Br. Ex. A.)  According to Fiscus, the

Letter Agreement, which specifies Delaware law as the controlling law, supports Fiscus' position that this Court has jurisdiction over Schnellmann.  The Court will discuss of the parties' arguments with respect to each agreement.

### 1.   The May 17, 2000 Letter Agreement

Fiscus argues that the choice of law provision is an important factor in determining that there is personal jurisdiction in New Jersey.  See Wessels, Arnold & Henderson, v. National Med. Waste, Inc., 65 F.3d 1427, 1434 (8th Cir. 1995)(a choice of law provision is an important factor in determining whether a defendant purposely availed himself in the forum state); see also Burger King, 471 U.S. at 482.  According to Fiscus, because the Letter Agreement between Fiscus and Global Research provides that Delaware law applies, this factor weighs in favor of the Court finding it appropriate to exercise personal jurisdiction over Schnellmann.

Without weighing in on the significant problems with Fiscus' argument that the Letter Agreement controls and weighs in favor of permitting this Court to exercise jurisdiction over Schnellmann (e.g., that Schnellmann was neither a party or signatory to the Letter Agreement, and the choice of Delaware law in the Letter Agreement would tend to suggest that Schnellmann purposely availed himself in Delaware rather than New Jersey) the Court notes that Fiscus' arguments related to the Letter

25

Agreement are irrelevant.  Having previously found (see Section II.A, _supra_) that the Court can exercise personal jurisdiction over Schnellmann based on his extensive contacts with New Jersey while negotiating the purchase of Fiscus' stock, this argument will not be considered further.

### 2.    The Escrow Agreement

This Court also doubts that the forum selection clause in the Escrow Agreement controls this litigation and warrants dismissal of Fiscus' Complaint.  To begin with, Fiscus has certified that he did not sign the Escrow Agreement.  (Fiscus Cert. ¶ 25.)  In his supplemental briefing, Schnellmann disputes Fiscus' claim that the signature is a forgery.  (Def.'s Br. of 12/23/05 at 13-16.)  As stated _supra_, when a district court reviews a motion to dismiss a case for lack of personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of plaintiff." _Carteret Sav. Bank_, 954 F. 2d at 142, n.1.  Thus, this Court must accept as true Fiscus' statement that the signature on the Escrow Agreement is not his.[9]  Second, the Escrow Agreement is between Fiscus and an entity named Makro

---

[9]   If through the course of discovery in this litigation Defendant Schnellmann is able to establish the authenticity of the Escrow Agreement, this matter of forum selection may be revisited.

Options Trading, A.G., an entity that is not a party to this litigation.

Based on dubious nature of both the Letter Agreement and the Escrow Agreement, at this stage in the litigation (without additional facts to determine the enforceability of either agreement), this Court finds that neither the Letter Agreement nor the Escrow Agreement control.  As such, this Court will not dismiss Fiscus' Complaint due to the forum selection clause in the Escrow Agreement.

### C. **Motions to Dismiss Under the Doctrine of Forum Non Conveniens**

Defendant has moved, in the alternative, to dismiss Plaintiff's Complaint under the doctrine of forum non conveniens. Because six of the seven parties to the present controversy are located in Switzerland, according to Defendant, this Court should abstain from exercising jurisdiction (even where it might be found to exist) under the doctrine of forum non conveniens. (Pl.'s Br. at 7-8.)  According to Defendant, the District of New Jersey is not the correct forum because (a) the forum does not lend itself to "ease of access" to evidence and (b) the Court may not have the authority to compel certain witnesses to appear. (Id. at 8.)  Such factors are critical to a court's analysis under the doctrine.  (Id.)

"The doctrine of forum non conveniens does not come into play unless the court in which the action was brought has both

subject matter and personal jurisdiction and is a proper venue." Charles Alan Wright, R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3828 (2d ed. 1986).  If the above criteria are present, this doctrine allows a district court to dismiss an action because the chosen forum, while a proper venue, is inconvenient.  <u>See</u> <u>id</u>.  Forum non conveniens has limited continuing validity in federal courts, but does apply to cases, such as this one, where it is alleged that a foreign country may provide the more convenient forum.  <u>See</u> <u>id</u>.  In a case involving international parties, the domestic plaintiff's choice of forum is generally given great deference when the plaintiff has brought suit in its home country.  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255-56, n.23 (1981).  It is "reasonable to assume that this choice is convenient."  <u>Id</u>. at 256.

Though a plaintiff's choice of home forum should rarely be disturbed, "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case."  <u>Piper Aircraft</u>, 454 U.S. at 240 (quoting <u>Koster v. (American) Lumbermens Mut. Casualty Co.</u>, 330 U.S. 518, 524 (1947).

To grant a defendant's motion, the district court must determine (1) that an adequate alternative forum exists for the adjudication of the plaintiff's claims and (2) whether certain private and public interests favor dismissal of the defendant's complaint.  See id., at 240, 254; Kultur Int'l Films, 860 F. Supp. at 1063.  The defendant "bears the burden of persuasion as to all the elements of the forum non conveniens analysis." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43-44 (3d Cir. 1988).

### 1.   Adequate Alternative Forum

First, as a threshold matter, this Court must determine whether an adequate alternative forum is available.  See id. at 44.  Two conditions must be satisfied to meet this adequacy requirement: (a) the defendant must be amenable to process in the alternative forum and (b) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff with appropriate redress.  See Piper, 454 U.S. at 254, n. 22; Kultur Int'l Films, 860 F. Supp. at 1063.  Here, Schnellmann argues that Switzerland represents an adequate alternative forum for this action and argues that this Court should dismiss Fiscus' claim in favor of Fiscus bringing this suit in Switzerland.

Based on Schnellmann's statement that his "contention [is] that the superior forum is abroad, in Switzerland" the Court concludes that Schnellmann would be amenable to the jurisdiction

29

of the Swiss courts.  (Def.'s Reply Br. at 12.)  Thus, this Court finds that the first prong of the threshold inquiry is satisfied.

With respect to the second prong - the availability of the appropriate relief in the alternative forum - the Court will find that Switzerland is an adequate alternative forum unless the law applied by the Swiss court does not permit "litigation of the subject matter of the dispute." Piper Aircraft, 454 U.S. at 255, n. 22.  Specifically, bearing in mind that defendant bears the burden of persuasion, this Court must determine whether the subject matter of Fiscus' claim - namely, securities fraud in violation of the Securities Exchange Act of 1934, common law fraud, breach of fiduciary duty and negligence - would be adequately redressed by a Swiss court.

Schnellmann has not satisfied his burden of persuading this Court that Fiscus' allegation will be adequately redressed in a Swiss court as he has failed to present any evidence that the Swiss courts recognize Fiscus' requests for relief or that the transfer of this matter to a court in Switzerland will do anything more than simply transfer the inconvenience of litigating this matter in a foreign jurisdiction from Schnellmann to Fiscus.  Courts in this District have recognized that a defendant can satisfy its burden or proving that an adequate alternative forum exists by presenting to the court certifications and affidavits of foreign attorneys or legal

experts from the proposed foreign jurisdiction attesting to the
fact that the type of relief a plaintiff is seeking is available
in that country.  See Kultur Int'l Films, 860 F. Supp. at 1064
(moving party submitted affidavits of a member of the English bar
who specializes in international commercial litigation attesting
to the availability of redress for plaintiff's claims in English
court); Lacey, 862 F.2d at 44 (the Third Circuit held that
movant's motion must be denied where movant failed to submit any
affidavit regarding an alternative forum and simply "did not
submit sufficient information to allow the district court
properly to undertake the forum non conveniens analysis.")

Similarly, here Schnellmann has provided no proofs
demonstrating that a Swiss court recognizes the causes of action
brought by Fiscus.  All Schnellmann has done is cite caselaw from
the Second Circuit Court of Appeals and the Southern District of
New York for the proposition that Switzerland is generally an
adequate alternative forum and that Swiss courts would have
jurisdiction to adjudicate claims against Schnellmann.  See
Schertenleib v. Traum, 589 F.2d 1156, 1159-60 (2d Cir. 1978);
ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse, 652
F. Supp. 1289 (S.D.N.Y. 1987).  As another Southern District of
New York court held only last year, citations to Schertenleib and
ACLI are inadequate for a defendant to satisfy his burden of
proving that the Swiss courts are an adequate alternative forum.

See Dale v. Banque SCS Alliance S.A., 2005 U.S. Dist. LEXIS 20967
*14-15 (S.D.N.Y. 2005).  This Court adopts a similar view.  As
the Dale court points out, "in each of [the Schertenleib and
ACLI] cases, the parties submitted expert testimony to the court
that enabled it to determine the likely application of Swiss law
to the facts presented by the action...[but] [n]o expert
testimony is available here."  Id.  The same can be said about
the present case.  Indeed, this Court also agrees with the second
point made by the Dale court, that "[e]ven if Schertenleib and
ACLI contained statements about Swiss law that were pertinent to
the instant action, those decisions were issued 27 and 18 years
ago, respectively...[and] [t]here is no basis upon which to
determine whether conclusions about Swiss law reached nearly two
or three decades ago remain accurate."  Id.

    As Schnellmann has failed to provide this Court with
sufficient information to allow the Court to determine if
Switzerland is an adequate alternative forum for the instant
action -- a threshold matter forum non conveniens analysis -- the
Court need not assess the "private interest factors" affecting
the convenience of the litigants and the "public interest
factors" affecting the convenience of the forum.  See Gulf Oil
Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947).  Schnellmann's
motion to dismiss on the basis of forum non conveniens, then, is
without merit.

### III. **CONCLUSION**

Schnellmann's motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) is denied, because, by having extensive and regular contact with Fiscus in New Jersey while negotiating the purchase of 100,000 shares of stock from Fiscus, Schnellmann purposefully availed himself of the privilege of doing business in New Jersey.  Schnellmann's motion to dismiss in order to enforce a forum selection clause mandating that this action be litigated in the courts of Switzerland is also denied due to the disputed facts surrounding whether Fiscus signed the Escrow Agreement; the Court will not determine that the Escrow Agreement in which the forum selection clause is contained is authentic.  Finally, Schnellmann's motion to dismiss under the doctrine of forum non conveniens is also denied as Schnellmann has failed to demonstrate that an adequate alternative forum for the instant action exists.

The accompanying Order is entered.


**June 20, 2006**                **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 United States District Judge

33